UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KEITH WATERS,

                      Plaintiff,

   -against-                                         9:15-CV-804 (LEK/DEP)

GALLAGHER, Captain, Bare Hill
Correctional Facility, *et al.*,

                      Defendants.

## DECISION AND ORDER

**I.    INTRODUCTION**

This civil rights action comes before the Court following a report-recommendation filed on August 7, 2017, by the Honorable David E. Peebles, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt. No. 107 ("Report-Recommendation"). Pro se plaintiff Keith Waters timely filed objections. Dkt. No. 110 ("Objections").

**II.    LEGAL STANDARD**

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306 n.2 (N.D.N.Y. 2008), abrogated on other grounds by Widomski v. State Univ. of N.Y. at Orange, 748 F.3d 471 (2d Cir. 2014); see also

Machicote v. Ercole, No. 06-CV-13320, 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument."). "A [district] judge . . . may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b). Otherwise, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.

### III. BACKGROUND

Plaintiff is an inmate currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Docket. Plaintiff commenced this action on July 1, 2015. Dkt. No. 1. An Amended Complaint, dated August 13, 2015, was subsequently filed on October 15, 2015, and is currently the operative pleading. Dkt. No. 14 ("Amended Complaint"). For a detailed account of the Amended Complaint, reference is made to the Report-Recommendation. Rep.-Rec. at 3–10.

Following the completion of discovery, Plaintiff moved for summary judgment on December 27, 2016. Dkt. Nos. 80 ("Motion"); 80-2 ("Plaintiff's Statement of Material Facts"). Defendants filed opposition papers and cross-moved for summary judgment on February 18, 2017. Dkt. Nos. 86 ("Cross-Motion"); 86-2 ("Defendants' Statement of Material Facts"). Plaintiff filed a reply, Dkt. No. 96, as did Defendants, Dkt. No. 103. Pursuant to § 636(b) and Local Rule 72.3, these motions were referred to Judge Peebles. He issued the Report-Recommendation on August 7, 2017. Rep.-Rec.

2

Plaintiff first challenges Judge Peebles's recommendation to dismiss his equal protection claim. Objs. 1–5. Plaintiff specifically objects to Judge Peebles's reliance on defendant Thomas LeClair's explanation for his actions and on Defendants' claim that monitoring prisoners' movements is central to DOCCS's mission. Id. at 3. Plaintiff claims that a reasonable factfinder could conclude that LeClair intentionally discriminated against him and that the other defendants, due to their "commonality of race," supported LeClair's intentional discrimination. Id. at 4.

Second, Plaintiff reiterates his challenge to DOCCS Inmate Rule 109.10, which is codified at 7 N.Y.C.R.R. § 270.2(B)(10)(i). Id. at 5. Plaintiff objects that Judge Peebles failed to address this claim explicitly, and argues that this Court must do so. Id.

## IV. DISCUSSION

The Court has considered the Objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved and adopted in part. The Court fully approves Judge Peebles's dismissal of Plaintiff's procedural due process claims. Rep.-Rec. at 13–16. The Court also agrees with Judge Peebles's dismissal of Plaintiff's equal protection claim, Rep.-Rec. at 17–22, but does so for different reasons. Finally, the Court will explicitly address Plaintiff's vagueness challenge. See Sharabi v. Recktenwald, No. 15-CV-2466, 2017 WL 1957040, at *1 n.1 (S.D.N.Y. May 10, 2017) ("Because Magistrate Judge Pitman did not address an insufficiency-of-the-evidence claim in the [Report-Recommendation], this Court reviews that claim *de novo*." (citing Charles v. County of Nassau, 116 F. Supp. 3d 107, 121 (E.D.N.Y. 2015))).

3

### A. Vagueness Challenge

Plaintiff contends that DOCCS Inmate Rule 109.10 is unconstitutionally vague and seeks a declaratory judgment. Am. Compl. at 14, 16, 19. The Court will not address this claim on the merits, however, because it is barred by the doctrine of res judicata.

Under the doctrine of res judicata, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979). Res judicata applies to any claim or defense previously available, whether or not it was actually litigated or determined. Tucker v. Arthur Anderson & Co., 646 F.2d 721, 727 (2d Cir. 1981). The main concern underlying the doctrine of res judicata is to bring litigation to an end after the parties have had a fair opportunity to litigate their claims. Seneca Nation of Indians v. State of New York, 26 F. Supp. 2d 555, 566 (W.D.N.Y. 1998). "Res judicata does not apply to bar a claim, however, when the first court did not have the power to award the relief sought in the later action." Allen v. Coughlin, No. 92-CV-6137, 1996 WL 363120, at *2 (citing Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir. 1986)).

Plainly, Plaintiff's prior Article 78 proceeding arose from the same foundation of facts as his federal suit. In addition, Plaintiff could have challenged Inmate Rule 109.10 in his Article 78 proceeding and received his requested relief. Justices of the Supreme Court of the State of New York are empowered to adjudicate void-for-vagueness challenges in special proceedings brought pursuant to Article 78 of the New York Civil Practice and Rules. See, e.g., Nicholas v. Herbert, 600 N.Y.S.2d 545, 545 (App. Div.) (holding, on the merits, that Inmate Rule 109.10 is not void for vagueness), lv. denied, 625 N.E.2d 588, 605 (N.Y. 1993); Turner v. Municipal Code Violations Bur. of City of Rochester, 977 N.Y.S.2d 876, 876 (App. Div.) (holding, on the merits,

4

that Rochester Code § 120-175 is unconstitutionally vague and issuing a declaratory judgment). Because a declaratory judgment was a remedy available in Plaintiff's prior Article 78 proceeding, his claim for this relief in federal court is barred by res judicata. See Natale v. Koehler, No. 89-CV-6566, 1991 WL 130192, at *3 (S.D.N.Y. Jul. 9, 1991) ("Fay could have litigated his claims for injunctive relief in the Article 78 proceeding and is therefore barred from doing so now." (quoting Fay v. South Colonie Central School District, 802 F.2d 21, 30 (2d Cir. 1986))).

### B. Equal Protection Claim

In contrast, Plaintiff seeks monetary damages in response to the alleged violation of his right to equal protection under the law. Am. Compl. at 17–18. "Because [P]laintiff could not have received damages for violations of his civil rights in the Article 78 proceeding, his damage claim [is] not barred by res judicata." Natale, 1991 WL 130192, at *3. Nor is it barred by the doctrine of collateral estoppel, because Plaintiff did not allege it in his prior Article 78 proceeding. Dkt. No. 86-25 ("Article 78 Petition"); see also Linden Airport Mgmt. Corp. v. New York City Econ. Dev. Corp., No. 08-CV-3810, 2011 WL 2226625, at *6 (S.D.N.Y. Jun. 1, 2011) ("[C]ollateral estoppel effect will only be given to matters actually litigated and determined in a prior action." (quoting Evans v. Ottimo, 469 F.3d 278, 282 (2d Cir. 2006))). Nevertheless, the Court affirms Judge Peebles's recommendation that Plaintiff's equal protection claim must be dismissed.

The Fourteenth Amendment commands that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause prohibits the unequal enforcement of even valid laws where the enforcement results from an improper motive. Yick Wo v. Hopkins, 118 U.S. 356 (1886).

"Generally, a plaintiff challenging law enforcement conduct on equal protection grounds 'must demonstrate that . . . he was treated differently from other similarly-situated individuals.'" Ali v. Connick, 136 F. Supp. 3d 270, 275–76 (E.D.N.Y. 2015) (quoting Vilkhu v. City of New York, No. 06-CV-2095, 2008 WL 1991099, at *5 (E.D.N.Y. May 5, 2008)). "However, a plaintiff need not 'show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection' where he or she has alleged 'an express racial classification, or alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner, or that a facially neutral statute or policy with an adverse effect was motivated by discriminatory animus.'" Id. (quoting Pyke v. Cuomo, 258 F.3d 107, 110 (2d Cir. 2001)); see also Snoussi v. Bivona, No. 05-CV-3133, 2010 WL 3924255, at *4 (E.D.N.Y. Feb. 17, 2010) (holding that a claim of intentional discrimination "does not require plaintiff to plead or prove that he was treated differently than other similarly situated individuals"), adopted by 2010 WL 3924683 (E.D.N.Y. Sept. 29, 2010). If a plaintiff demonstrates that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner, "'at least in part,' the defendant must show that the same result would have occurred even without consideration of the plaintiff's race or national origin." Ali, 136 F. Supp. 3d at 279 (quoting United States v. City of Yonkers, 96 F.3d 600, 612 (2d Cir. 1996)).

       *1. Defendant Thomas LeClair*

Plaintiff alleges that LeClair issued the misbehavior report at the root of this lawsuit due to racial animus. Am. Compl. at 8. He also alleges that LeClair told him to "return your black ass to the housing unit" and admonished him for "arriv[ing] on colored people time." Id. While

6

LeClair denies making these statements, Dkt. 86-18 ("LeClair Delcaration") at 14, "this is the type of 'he said, she said' dispute common in discrimination cases, where 'the only direct evidence available very often centers on what the defendant allegedly said or did,' and 'the defendant will rarely admit to having said or done what is alleged . . . .'" Ali, 136 F. Supp. 3d at 281 (quoting Danzer v. Norden Sys., Inc., 151 F.3d 50, 57 (2d Cir. 1998)).

However, LeClair has presented evidence that he would have issued the misbehavior report against Plaintiff regardless of racial bias. LeClair testified that Black or African-American inmates arrived at the law library at 4:00PM or later on nineteen occasions in May 2014 while he was on duty. LeClair Decl. at 12; see also Dkt. No. 86-16 ("Law Library Log") at 1–2. Based on these nineteen incidents, LeClair only issued a misbehavior report to Plaintiff on May 24, 2014, because Plaintiff—unlike all of the other inmates—"did not have a legitimate reason for being late." LeClair Decl. at 12; see also id. at 3 ("I further issued that misbehavior report to [P]laintiff because he failed to give me any explanation for why he was so late arriving to the law library, or where he had gone after leaving the J2 housing unit, when I asked for that information."). As Judge Peebles noted, Plaintiff has not produced any evidence that contradicts this sworn statement. Rep.-Rec. at 21. Plaintiff does not claim that he provided a reason for being late to LeClair, nor did he produce any testimony that LeClair ignored similar failures to offer reasons for being late to the library. Therefore, LeClair has satisfied his burden, and Plaintiff's equal protection claim against him must be dismissed.

2. *Defendant Jeffrey LaGray*

Plaintiff also alleges that defendant Jeffrey LaGray's decision-making was tainted by racial animus. Am. Compl. at 10. Plaintiff claims that LaGray, who oversaw the hearing to

7

review the misbehavior report issued by LeClair, responded to Plaintiff's decision to plead not guilty by stating, "[Y]our kind of people never know when to cut your losses and run." Id. Unsurprisingly, LaGray denies making this statement. Dkt. No. 86-8 ("LaGray Declaration") at 16–17.

Like LeClair, LaGray has presented evidence that he would have found Plaintiff guilty of the allegations in the misbehavior report regardless of racial bias. At the hearing, Plaintiff did not present any defense other than stating that he was not twenty-five minutes late to the library on May 24, 2014. Id. at 7. LaGray testified that Plaintiff "offered no version of the relevant events to counter the description in the misbehavior report . . . ." Id. In addition,

> He offered no reason for why he was not at the law library on time; did not dispute that he failed to offer any explanation for his delay to C.O. LeClair at the time of the incident; did not allege any ulterior or improper motives on the part [of] C.O. LeClair in charging him; made no allegations regarding any alleged conspiracy or effort to wrongfully charge him or wrongfully designate the charges as Tier II infractions; did not explicitly dispute any specific fact described in the misbehavior report; offered no description or allegation regarding anything C.O. LeClair might have said during their encounter at the law library on May 24, 2014; made me no claim that the DOCCS rules he was charged with violating were unclear, unconstitutional or otherwise improper; mentioned nothing about his race/ethnicity or any claim that he thought that was a factor in C.O. LeClair charging him or in the charges against being designated as Tier II infractions; etc.

Id. at 7–8. Since Plaintiff does not allege that he presented a defense at his hearing, or that LaGray had any reason to disbelieve LeClair's uncontested testimony at the hearing, the Court finds that LaGray has satisfied his burden in demonstrating that he would have found Plaintiff guilty of the alleged offenses regardless of racial animus. Therefore, Plaintiff's equal protection claim against him must be dismissed.

### 3. Defendants David Gallagher and David Theobold

As Judge Peebles noted, Plaintiff did not present any direct evidence of racial animus from defendants Gallagher and Theobold. Rep.-Rec. at 22. Plaintiff's allegations that their decision-making was tainted by racial animus are wholly conclusory and must be dismissed.

## II. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 107) is **APPROVED and ADOPTED in part** in accordance with this Decision and Order; and it is further

**ORDERED**, that Defendants' Cross-Motion for Summary Judgment (Dkt. No. 86) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Motion for Summary Judgment (Dkt. No. 80) is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Amended Complaint (Dkt. No. 14) is **DISMISSED in its entirety**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:	September 07, 2017
	Albany, New York

Lawrence E. Kahn
U.S. District Judge